## UNITED STATES *v.* JACKSON.

(*Circuit Court, S. D. Georgia, W. D.*  October Term, 1886.)

1. CRIMINAL LAW—WEIGHT OF EVIDENCE—REASONABLE DOUBT.

   In criminal trials simply, a preponderance of testimony is insufficient. A greater degree of mental conviction than in civil cases is held to be necessary, and the evidence must produce such an effect on the mind of the individual juror that, after its consideration, he can, in view of his oath, have no reasonable doubt of the guilt of the party accused, before a conviction is justified.[1]

2. SAME—FLIGHT OF ACCUSED—ASSUMED NAME.

   The flight of the accused under an assumed name, coincident with the theft of letters traced to his possession unexplained, tends strongly to show guilt.

3. POST-OFFICE—ROBBING THE MAILS—REGISTERED LETTER STOLEN—INDICTMENT—ALLEGATION OF OWNERSHIP.

   When the indictment alleges ownership in the person to whom a registered letter was directed, and it appears in proof that when it was stolen the sender had deposited it with the postmaster, taking his receipt therefor, and it had, by due course of mail, left the mailing office, *held,* that its custody by the post-office department was for the benefit of the person to whom it was addressed; that it was his property, the sender had no control over it, and there was no variance.

4. CRIMINAL LAW—EVIDENCE—GOOD CHARACTER.

   In a criminal trial the good character of the accused is generally a fact fit, like all other facts proved in the cause, to be weighed and estimated by the jury, for it may render that doubtful which otherwise would be clear.

5. SAME—WEIGHT OF.

   If the guilt of the accused is plainly proven to the satisfaction of the jury, notwithstanding proof of good character is made, and has been given its due weight, it would be their duty to convict, irrespective of such proof of character; but, where the evidence is doubtful and conflicting, the importance of the character of the accused is increased.

(*Syllabus by the Court.*)

Indictment under section 5467 of the Revised Statutes of the United States, for robbing the mails.

*Du Pont Guerry,* U. S. Atty., for the United States.

*Hawkins & Hawkins, C. G. Simmons,* and *L. J. Blalock,* for defendant.

SPEER, J., (*charging jury.*)  Will R. Jackson is on trial charged with the offense of robbing the mails. The statute he is alleged to have violated defines the offense.

In this trial, as in all criminal prosecutions, the burden and duty is on the government to produce such evidence of the truthfulness of the accusation as will satisfy the jury that the defendant is guilty.

[1]That the guilt of a prisoner must be established beyond a reasonable doubt, and what is such reasonable doubt, see State v. Elsham, (Iowa,) 31 N. W. Rep. 66; Heldt v. State, (Neb.) 30 N. W. Rep. 626; People v. Steubenvoll, (Mich.) 28 N. W. Rep. 890, and note; State v. Thurman, (Iowa,) 24 N. W. Rep. 511, and note; State v. Meyer, (Vt.) 3 Atl. Rep. 201, and note; U. S. v. Searcey, 26 Fed. Rep. 442, and note; Brown v. State, (Ind.) 5 N. E. Rep. 905, and note; Stitz v. State, (Ind.) 4 N. E. Rep. 145, and note; Com. v. Leonard, (Mass.) 4 N. E. Rep. 96, and note; People v. Guidici, (N. Y.) 3 N. E. Rep. 496; State v. Jones, (Nev.) 11 Pac. Rep. 318, and note; Clair v. People, (Colo.) 10 Pac. Rep. 799, and note; Minich v. People, (Colo.) 9 Pac. Rep. 4, and note; Leonard v. Territory, (Wash. T.) 7 Pac. Rep. 872, and note; State v. Payton, (Mo.) 2 S. W. Rep. 394.

The degree of satisfaction and certainty required is not absolute conviction or certainty, but the evidence must produce that effect on the minds of the individual juror that, after its consideration, he can, in view of his oath, have no reasonable doubt of the guilt of the party accused. By "reasonable doubt" I do not mean any fanciful conjecture, or strained inference, but I mean such a doubt as a reasonable man would act upon, or .decline to act upon, when his own concerns were involved,—a doubt for which a good reason can be given, which reason must be based on the evidence, or the want of evidence. This being true, it follows, logically, that the party accused, where such doubt as I have described exists, is entitled to its benefit,—he should be acquitted.

But where the evidence is satisfactory to the impartial mind that the crime was committed; that the prisoner committed it as charged,—when the mind comes naturally and reasonably to this conclusion, from a fair consideration of the evidence,—properly there can be no reasonable doubt, and the prisoner should be convicted. The same idea is expressed in another form when it is declared, 'as I now declare to you, that the prisoner is entitled to the presumption of innocence until his guilt, by proof, is made satisfactorily to appear. When such proof is had, the presumption of innocence is destroyed, and the prisoner should be convicted.

The following written requests to charge have been handed the court by counsel for the defendant, and I now charge you—

"(1) That, in a criminal case, a preponderance of testimony is insufficient to convict the accused, but a greater strength of mental conviction is held necessary to justify a verdict of guilty; and if there is any other reasonable hypothesis than the guilt of the defendant, from the evidence, or from the want of evidence, you are bound to adopt that theory, and acquit the defendant.

"(2) That the government is bound to prove every material allegation laid in the indictment; and, before the jury will be authorized to convict the prisoner under this indictment, you must be satisfied, from the evidence, beyond a reasonable doubt, that the money alleged to have been stolen was the property of the person alleged to be the owner in the indictment.

"(3) Where the evidence relied upon to convict is entirely circumstantial, the evidence must connect the defendant with the criminal act charged, and exclude every other reasonable hypothesis than the guilt of the defendant, before you will be authorized to find the prisoner guilty. The defendant is presumed to be innocent, and that presumption abides with him throughout the trial, and until removed by testimony satisfactory to the minds and consciences of the jury."

Bearing in mind these general rules given to you for your guidance in the determination of this issue, you will come to the consideration of the evidence. It is not disputed that on the first day of October, 1885, the accused was the assistant postmaster at Americus, in this district and division. He was an employe of the postal service. On that night he receipted for five registered packets, mailed from divers places to such points as, by due course of mail, they must

go through the post-office at Americus. His receipts for these packets have been introduced in evidence, and his signature identified. It further appears from the evidence that the parties to whom these registered packets were directed have never received them; that careful search was made for them in the Americus office. No account is had of these packets after they reached the hand of the accused. The accused made no record of them, as he was required to do, and he disappeared that night, and left the state, under an assumed name.

These are circumstances which, under the law, demand an explanation from the accused, or that such explanation be furnished by the facts of the case. In the absence of such explanation, if you find that the letters were stolen, these circumstances would raise the presumption that the accused was implicated in their disappearance. You will look to the evidence to see if such satisfactory explanation is afforded. If there be no such explanation properly inferable from the evidence, you will be justified in returning a verdict convicting the prisoner. If you find, on the other hand, from the evidence, that these circumstances have been satisfactorily explained, or that in themselves they are reasonably consistent with the theory of the innocense of the accused, it will be your duty to acquit him. In reaching your conclusion on this question, it is your duty to consider the testimony of the accused himself. By the humanity of the law, he is permitted to testify in his own favor. You are not bound to believe what he says, however, and you must bear in mind that he has great interest in your finding; and if his testimony conflicts with that of other witnesses, who have no interest in the question of his guilt or innocence, generally it would be your duty to credit that witness or those witnesses who have the best opportunity for knowing the fact to which they testify, and the least inducement, from interest or other cause, to testify falsely. You may, however, give to the testimony of the accused himself just such weight as you think it is properly entitled to have.

It is not denied that the accused disappeared from Americus contemporaneously with the disappearance of these registered letters; that is to say, as the prosecution insists, on the night of October 1st. He himself says that the receipts were made out on the 2nd, but that the letters were registered or dated on the 1st. If you believe this to be true, it, also taken in connection with the other evidence, demands a satisfactory explanation from the accused.

It is insisted by the defendant that the evidence upon which the prosecution must rely, in order to obtain a verdict of conviction, is circumstantial evidence. That is true, in part. It is shown by evidence positive—not circumstantial in its nature—that the defendant received, receipted for, and had in his custody four of these registered letter packets. It is shown positively that the persons to whom these packets were addressed did not receive the letters inclosed. It is

also shown, by positive or direct testimony, that the sums of money charged in the bill of indictment were placed in the letters inclosed in the register packet envelopes. By positive testimony, the missing letters were traced to the hands of the accused, and the evidence is only circumstantial in this respect: from the circumstance that the missing letters and their contents are not accounted for after they reach the hands of defendant, and, from the circumstance of his sudden and speedy flight, it is inferred by the prosecution that he embezzled the letters.

Now, I charge you, as requested by defendant's counsel, that before you are warranted in finding guilt from the evidence of circumstances, as in this case, such circumstances must so clearly point to the guilt of the accused, that there is left to the impartial and reasonable mind no theory or explanation of the circumstances consistent and reconcilable with the theory that the accused is innocent; but that explanation must be not only consistent with the theory of innocence, but it must be reasonable, and it must arise from the evidence, or from the want of evidence. The jury will not be justified in making excursions outside of the evidence, to conjure up fanciful theories. They must take the practical and sensible view of the evidence which men of fair intelligence take of matters of fact in the ordinary affairs of life.

Nor are you limited to the consideration of one portion of the evidence. You must consider all the evidence, and though a circumstance tending to show guilt may be partially susceptible of an explanation which, if credible, might be satisfactory, still, if there be other evidence to show the guilty conduct and purposes of the accused, you must take all the evidence together, and then determine whether the guilty or the innocent theory is your proper finding. The truth is that all evidence is in its nature more or less circumstantial. All statements of witnesses—all conclusions of juries—are the results of inference. All evidence admitted by the court is to be considered by the jury in making up their verdict, and their duty is to acquit, if on such evidence there is reasonable doubt of the defendant's guilt; otherwise, it is their duty to convict.

It is insisted by the defense that there is such a variance between the allegations in the bill of indictment, relating to the ownership of the money contained in the registered packets and the proof to show ownership, that the prisoner is entitled to an acquittal. It is true that the proof must conform to the allegations; but when the ownership of a registered letter and its contents is alleged to be in the person to whom the proof shows it was directed, and the proof shows that such registered letter was mailed and the sender took a receipt, the letter then is, in contemplation of law, the property of the person to whom it is sent; and, if the proof further shows that it has left the mailing office, the sender has no further control over it, and its delivery is complete. Its custody by the post-office department is

the custody of the law for the benefit of the person to whom it is addressed, or to his or her order, or his or her legal representative.

I charge you that if you find from the evidence that the registers mentioned in the indictment are shown by the proof to have been mailed, and that the persons mailing them took the department's receipt for them, and that they had passed from the mailing office, then there is such a property in them in the persons to whom they were directed as will sustain the allegation of ownership in the bill of indictment, and there will in that case be no variance which will entitle the prisoner to an acquittal.

It is in evidence before you that the defendant hurriedly left Americus the night after these registered letters were received; that he gave no notice of his departure, and that he was arrested the next month on the other side of the continent; that he denied his identity, and his residence; that he said his name was Jack Jones; that he had with him about $225 when he was arrested. Two of his letters, written to a brother in Troy, Alabama, are before you. In both he enjoins secrecy; in one he states that he anticipates arrest. One is signed with a fictitious name. In one he informs his brother that he incloses him postal orders for $300; tells him to get them cashed, and to meet him in Mobile. He tells his brother, if the postmaster at Troy has not got the money to cash the orders, to transfer them to some bank, and to get the money, and meet him. This was on the thirtieth of September. He admits that these money orders were drawn by him without placing the cash in the office whence they were issued, as he should have done.

Subsequently, in the other letter, written from El Paso, he directs his brother to keep $100 of the money, and to send his mother $200. He states that Maj. Black, the postmaster, authorized him to issue these postal orders without depositing the cash with the government funds. This Maj. Black denies. In either event, the accused must have known that it was a criminal violation of the postal laws. You are not, however, trying him for this offense. It is only admitted on the theory of the prosecution that it was part of a deliberate plan to rob the government, both by the fraudulent money orders, and by the theft of the registered letters carried out at the same time. You will observe that this letter was written on the thirtieth of September. By his own account, he left the night of the second of October. It is proper for the court to call your attention to this circumstance, and you will determine what importance, if any, belongs to it. If you believe it important, you will determine whether there is a satisfactory explanation for it. It must be considered with all the other evidence.

The prisoner has made to you an explanation of his flight. He declares that he fled from Americus on very short notice because of an alleged improper intimacy with a woman of that place, and the

threatened criminal prosecution therefor. It is for you to say whether this account is reasonable and satisfactory. He explains the possession of the sum of money found with him at the time of his arrest by the statement that it was the proceeds of his winnings at cards. You will determine what weight to attach to that statement. You must not find your verdict in view of any isolated portion of the evidence before you. You must carefully take into consideration all the evidence that has been admitted, considering, as well, the evidence for the prisoner as for the prosecution.

Evidence has been introduced to show the general character of the accused antecedent to this transaction. Good character is generally a fact fit, like all other facts proved in the cause, to be weighed and estimated by the jury. Good character is an ingredient which may render that doubtful which would otherwise be clear. If the guilt of the accused is plainly proven to the satisfaction of the jury, notwithstanding the good character of the accused has been given its due weight by them, it would be their duty to convict the defendant, irrespective of such proof of character; but, where the evidence is doubtful and conflicting, the importance of the character of the accused is increased. In ascertaining what is that character, the jury is not limited to the testimony of those who swear generally, but they may look to all the evidence, and then determine whether or not the accused possessed good character.

There are several counts in this indictment. You may, gentlemen, if you think proper, under your view of the evidence and the rules I have given you, find the accused guilty on one or more counts, and not guilty on the others. If so, you will say: "We, the jury, find the defendant, Will R. Jackson, guilty on the first count, and not guilty on the others;" or guilty on the second and third counts, and not guilty on the others, as you may find. If you find him guilty on all the counts, you will say: "We, the jury, find the defendant guilty." If you find him not guilty, you will say: "We, the jury, find the defendant, Will R. Jackson, not guilty;" and your foreman will sign the verdict. Gentlemen, retire, and make up your verdict.