**Fruent C. KIMES, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

No. 16091.

United States Court of Appeals
Fifth Circuit.

March 19, 1957.

Writ of Certiorari Denied June 10, 1957.
See 77 S.Ct. 1299.

Baxter N. Knox, Jr., Hugh N. Clayton, New Albany, Miss., for appellant.

Thomas R. Ethridge, U. S. Atty., Oxford, Miss., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

HOLMES, Circuit Judge.

We accept the correction of counsel as to the exact time that the pistol used in the robbery was thrown away by the appellant; but the point is that the pistol so used, or one similar to it, was traced into the possession of appellant after the robbery and before the arrest. It was said of old that the wicked flee when no

man pursueth, and there was evidence before the jury to warrant the finding that this was what happened in the instant case. The authorities seem to agree that evidence of flight is always admissible, especially when the conduct of the defendant is apparently inconsistent with innocence.

As stated in United States v. Heitner, 2 Cir., 149 F.2d 105, 107, it has at no time been doubted that flight is a circumstance from which a court or an officer may infer what everyone in daily life inevitably would infer. In Kanner v. United States, 7 Cir., 34 F.2d 863, it is stated that flight implies a guilty state of mind. Other cases and authorities discussing evidence of flight and its admissibility, as well as other conduct of the defendant subsequent to the crime, are Allen v. U. S., 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528; Bird v. U. S., 187 U.S. 118, 23 S.Ct. 42, 47 L.Ed. 100; United States v. Jackson, C.C., 29 F. 503; Rowan v. U. S., 7 Cir., 277 F. 777; Strom v. U. S., 9 Cir., 50 F.2d 547; Curreri v. Vice, 9 Cir., 77 F.2d 130; Gicinto v. U. S., 8 Cir., 212 F.2d 8; Wigmore on Evidence (3rd ed.), Vol. II, Sec. 276, p. 111; Wharton's Criminal Evidence (12th ed.) Sec. 205, Vol. 1, p. 414.

In United States v. Dalhover, 7 Cir., 96 F.2d 355, the crimes (bank robbery and murder) occurred on May 25, 1937, and the encounters with police officers were had on August 7, 1937, at Baltimore, and October 12, 1937, at Bangor, Maine, when the defendant was captured. The court held that all the pertinent facts and circumstances with respect to the robbery, the shooting of a police officer, the flight, the pursuit, the attempted capture at Baltimore, the bandit's property there recovered, the arrest of appellant and his associates at Bangor, the killing of appellant's associates by police officers, the actions of appellant and his associates at Bangor, and all the property in their possession, were competent. The court, citing authorities, held that appellant's flight was admissible against him; likewise that facts and circumstances attending his arrest were admissible, which included all weapons found in his possession and custody, at and immediately prior to his arrest, as well as those found in the custody of his abettors and confederates. Shelton v. United States, 83 U.S.App.D.C. 257, 169 F.2d 665, is substantially to the same effect, being another instance in which defendant's capture occurred a considerable time after the commission of the crime. Moreover, in his charge to the jury, the trial judge said:

> "Now later on in the evidence, and there has been no contradiction of that evidence, that up in Ponotoc County, after some kind of escapade about which we are not concerned, Mr. Kimes threw that gun out of his pocket, or threw a gun, the one which has been introduced in evidence here, out of his pocket, that the law enforcement officers later on went there and found it, and the gun which was thrown from Mr. Kimes' pocket was here exhibited to you, and that the woman said that the man down there in the bank had a gun which apparently looked like that gun and made the same sort of sound."

Again and again, the judge cautioned the jury that the only issue involved was whether the defendant robbed the Bank of Ackerman, and that nothing else should be considered by the jury. The commission of the alleged bank robbery was undisputed, and the only issue before the jury was as to the identity of the defendant as the principal robber; the one who clicked and exhibited the gun. All the cross-examination about which the appellant complains was necessary, and due to the extensive use of fictitious names by the witnesses being questioned. The appellant voluntarily testified in his own behalf, and exposed his own criminal record to some extent. In one instance, the trial court said: "Your witness brought it out herself. I think the Government is entitled to have an explanation, if there is one."

After a fair trial before a good judge and competent jury, with all the facts undisputed except the alibi of the defend-

ant, we find nothing suspicious, questionable, or remarkable in the action of the jury in returning its verdict of guilty after deliberating only twenty minutes. The trial of this case consumed parts of several days, including the arguments of counsel and the charge of the court. During these days and the intervening nights, the jury had ample time for consideration and reflection. It saw and heard the witnesses, including the defendant. It saw the size of his foot. It retired to consider its verdict with the final words of the court's charge ringing in its ears: "You will remember that the only issue you are trying is whether Mr. Kimes robbed the Bank of Ackerman on that particular occasion. If there is any reasonable doubt about this matter, you must give him the benefit of that doubt and acquit him. Also bearing in mind, if you are satisfied beyond a reasonable doubt that he did rob the Bank of Ackerman, it would be your duty to find him guilty."

Finally, we think that the record in this case is entirely free from any reversible error, and that the petition for rehearing should be denied.

Petition denied.