COMMONWEALTH vs. MICHAEL B. DOYLE,

Worcester. December 7, 1983. — May 21, 1984.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Evidence,* Blood alcohol test. *Practice, Criminal,* Disclosure of evidence, Deliberation of jury. *Jury and Jurors. Motor Vehicle,* Operating under the influence.

The fact that the jury at the trial of a complaint charging the defendant with operating a motor vehicle while under the influence of intoxicating liquor had deliberated for only ten minutes before finding the defendant guilty did not entitle the defendant to a new trial. [26-27]

COMPLAINT received and sworn to in the Second Eastern Worcester Division of the District Court Department on September 7, 1982.

On transfer to the jury session of the Fitchburg Division, a motion to suppress was heard by *Gelinas*, J., and the case was tried before *Murphy*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Stephen J. Philbin* (*Austin T. Philbin* with him) for the defendant.

*William F. George,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, Michael B. Doyle, was convicted at a first instance trial before a jury of six of operating a motor

vehicle while under the influence of intoxicating liquor, operating to endanger, and failure to stay within marked lanes.[1] On appeal[2] the defendant claims error in the denial of a motion to suppress the results of his breathalyzer examination following the prosecution's failure to respond to a motion for the production of ampules used in the examination. The defendant also argues that his motion for a new trial, based on a claim that the speed with which the jury returned the verdicts violated his right to a jury trial under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights, should have been granted. We affirm the judgments.

We summarize the facts. The defendant was arrested at approximately 1 A.M. on September 7, 1982, after a State trooper observed a tractor trailer driven by the defendant weaving from one side of the highway to the other. The trooper stopped the truck and noted that the defendant was glassy-eyed and had an odor of alcohol on his breath. At the trooper's request, the defendant attempted to walk a straight line along the breakdown lane and failed. The defendant was unsteady in performing a second sobriety test requiring him to recline his head and touch his nose. The defendant stated to the trooper that he (the defendant) had consumed six beers during the evening and asked to be permitted to "sleep if off" on the side of the road. The trooper saw four unopened beer bottles in the cab of the truck.

Having formed the opinion that the defendant was under the influence of intoxicating liquor, the officer transported the defendant to the State police barracks. The defendant consented to the administration of a breathalyzer test. A .15 blood alcohol content reading was recorded. A simulator test, see *Commonwealth* v. *Neal, ante* 1, 6 (1984), performed immediately

---

[1] The defendant was sentenced to probation for one year on the operating under the influence conviction. He received a $200 fine and $50 surfine on the operating to endanger charge. His conviction for failure to stay within marked lanes was placed on file.

[2] The defendant appealed to the Appeals Court, and we transferred the case here on our own motion.

after the defendant's examination produced a reading slightly above .15. The defendant was advised of his right to an examination by a physician, G. L. c. 263, § 5A, and to an independent blood alcohol content examination, G. L. c. 90, § 24 (1) (e), but declined.

The defendant admitted at trial that he had imbibed several bottles of beer prior to the trip in question, and that he had asked the trooper to be allowed to sleep by the road, but denied he was affected by his beer consumption. He attributed the weaving of the truck to the fact that he had placed radial tires on the front of the truck and bias tires on the back. He asserted he failed the line-walking test because he was nervous about traffic on the highway. The beer bottles the trooper saw were empty, he said, and had been placed in the truck by the defendant the previous weekend.

1. The breathalyzer instrument used to test the defendant was a Smith & Wesson unit which employs a technique similar to that of the model described in *Commonwealth* v. *Neal, supra* at 5-6.[3] Prior to trial, the defendant filed, and the judge granted, a motion for the production of exculpatory evidence and a motion specifically requiring the Commonweath to produce information and physical evidence relating to the breathalyzer test, including the test and reference ampules. See *Commonwealth* v. *Neal, supra* at 5. The Commonwealth failed to comply with the order for production of the ampules. The defendant then filed a motion to suppress the breathalyzer result.

At the hearing on the motion to suppress, the defendant qualified as an expert chemist Dr. Roy Kryger, who stated that erroneous test results could occur due to irregularities in the ampules such as improper glass thickness, glass imperfections, insufficient solution, variations in the proportion of potassium dichromate to other chemicals in the solution, or contamination of the interior or exterior surfaces of the ampules.

---

[3] The defendant made no claim at trial or on appeal with regard to radio frequency interference. Compare *Commonwealth* v. *Neal, supra*. We deem the issue waived. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

Dr. Kryger said that accurate retesting of test ampules is possible if such ampules are resealed with a flame and stored at a low temperature or frozen. The police officer who administered the defendant's examination stated that he had routinely discarded the test ampule after the examination. The judge denied the motion without recording any findings of fact or conclusions of law.

The defendant argues that the destruction of the ampules deprived him of evidence he was constitutionally entitled to inspect under *Brady* v. *Maryland*, 373 U.S. 83 (1963), and that suppression of the breathalyzer result is required as a matter of due process. The defendant's claim is governed by the principles we have set forth in *Commonwealth* v. *Neal*, *supra*. We have rejected the contention that preservation of the ampules is required for subsequent retesting by the defense. *Neal, supra* at 12-13. With regard to the preservation of ampules for physical inspection by the defense, the record in this case, as in *Commonwealth* v. *Neal, supra*, contains no evidence on the basis of which we could conclude that, in light of the simulator test administered after the defendant's test, a reasonable possibility exists that the ampules would have revealed a defect in the test result.

At oral argument, the defendant suggested that the simulator test may have yielded an erroneous result. That claim is not supported by the record. The test card for the simulator test conducted after Doyle's breathalyzer examination indicates a reading of approximately .155. At trial, the officer who administered the defendant's examination and the simulator test stated that the simulator reading falls within the acceptable range of deviation for correct simulator readings. Thus, there is no basis in the record for concluding the simulator result is incorrect. There was no error in the denial of the motion to suppress. *Commonwealth* v. *Neal, supra* at 13-14.

2. We find no merit in the defendant's claim that, apart from the question whether the breathalyzer result was properly admitted, he is entitled to a new trial because the brevity of the jury's meeting in the jury room prior to delivering the verdicts suggests the jury did not deliberate properly. "See

*Commonwealth* v. *Clark*, 292 Mass. 409, 416 (1935), where the jury returned a guilty verdict in a murder case after no more than nineteen minutes of deliberation. In responding to the defendant's claim that the jury did not give the evidence adequate consideration, this court said '[t]he case had been tried fully, and the jury could not help receiving impressions as the case proceeded.' See also *United States* v. *Anderson*, 561 F.2d 1301, 1303 (9th Cir.) (per curiam), cert. denied, 434 U.S. 943 (1977); *State* v. *Inman*, 350 A.2d 582, 600-601 (Me. 1976) (forty minutes, murder); *State* v. *Verdone*, 114 R.I. 613, 623 (1975) (thirteen minutes, rape); *State* v. *Killary*, 133 Vt. 604, 607 (1975) (less than forty-seven minutes, first degree murder)." *Commonwealth* v. *Webster*, 391 Mass. 271, 276 n.2 (1984).

The defendant's trial was a short one. Three witnesses testified. The factual issues for the jury's determination were simple. The defendant admitted that he had been drinking, that he asked to be allowed to sleep by the highway, and that he failed one of the field sobriety tests, but contested that he was driving under the influence of alcohol. There was strong evidence to the contrary. We cannot say on this record that ten minutes were insufficient for a jury properly to deliberate over the evidence and reach a reasoned result. No specific period of deliberation is constitutionally required. *United States* v. *Anderson, supra* at 1303. *Wall* v. *United States*, 384 F.2d 758, 762 (10th Cir. 1967). See *United States* v. *Brotherton*, 427 F.2d 1286 (8th Cir. 1970) (five to seven minutes sufficient for deliberation); *United States* v. *Young*, 301 F.2d 298 (6th Cir. 1962) (four minutes enough); *State* v. *Ballard*, 126 N.J. Super. 427 (1974) (fifteen minutes adequate). See also *Kimes* v. *United States*, 240 F.2d 301 (5th Cir.), cert. denied, 354 U.S. 912 (1957). The defendant's argument that he was deprived of a fair trial by the jury's prompt decision "is a two-edged sword [for] [t]he jury may have thought there was not even a shadow of doubt as to guilt." *United States* v. *Anderson, supra.*

*Judgments affirmed.*